IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WALTER YOUNG, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 19-CV-717-S-BK |
| | § | |
| SELECT PORTFOLIO SERVICING, INC., U.S. BANK, N.A., AND TRANS AM SFE II, LLC, | § | |
| | § | |
| DEFENDANTS. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order Referring Case*, Doc. 9, *Defendants' Motion for Final Summary Judgment*, Doc. 19, and *Defendant Trans AM SFE II, LLC's Motion for Summary Judgment*, Doc. 22, are before the Court. As detailed below, the motions should be **GRANTED**.

I.   **PROCEDURAL HISTORY**

In February 2019, Plaintiff filed this counseled action in state court seeking to prevent a post-foreclosure eviction from his residence (the "Property"). Plaintiff asserts that when he fell behind on his mortgage payments with his mortgagee, Defendant U.S. Bank, N.A. ("U.S. Bank"), he applied for a loan modification with Defendant Select Portfolio Servicing ("SPS"), the servicer of the loan. Doc. 1-1 at 9. SPS offered a trial loan modification (the "Trial Plan"), requiring Plaintiff to make payments of $559.05 for three months, beginning on December 1, 2015. Doc. 1-1 at 9. Plaintiff alleges that he made the payments, but the Property was

nevertheless posted for a foreclosure sale to take place on October 4, 2016 (the "October Sale"). Doc. 1-1 at 9. On October 14, 2016, U.S. Bank rescinded the October Sale; however, the Property was sold at a foreclosure auction to Defendant Trans Am SFE II, LLC ("TAS") on November 1, 2016 (the "November Sale"). Doc. 1-1 at 9-10. Plaintiff claims that he did not receive the required notice prior to the November Sale and was not aware of it until he found notice of an eviction suit from TAS attached to his door two months later. Doc. 1-1 at 10.

He raises claims against U.S. Bank and SPS for (1) "breach of contract/money had and received/unjust enrichment," Doc. 1-1 at 11-14; (2) violations of the Real Estate Settlement Procedures Act ("RESPA") based on their "dual-tracking" his Trial Plan and the November Sale and failing to advise him his loan modification application had been denied and that he had a right to appeal, Doc. 1-1 at 14-17; (3) violations of various provisions of the Texas Debt Collection Practices Act ("TDCA"), Doc. 1-1 at 18-20; and (4) wrongful foreclosure or, alternatively, for a judgment setting aside the foreclosure sale and cancelling the substitute trustee's deed, Doc. 1-1 at 21-23. As to TAS, Plaintiff seeks to quiet title/trespass to try title. Doc. 1-1 at 23-24. In addition to monetary damages, costs, and attorneys' fees, Plaintiff requests an accounting and a declaratory judgment. Doc. 1-1 at 24-25. U.S. Bank and SPS removed the case to this Court based on federal question jurisdiction, Doc. 1 at 3, and all Defendants now move for summary judgment.

## II.   APPLICABLE LAW

Summary judgment will be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute regarding a material fact is "genuine if the evidence is such that a reasonable jury could return a

verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

### III. FACTUAL EVIDENCE

Plaintiff defaulted on his mortgage payments and, by October 2015, still owed his February 2013 payment. Doc. 21-1 at 4 (Syphus Decl.). On November 3, 2015, SPS sent Plaintiff a letter stating that he was approved for the Trial Plan and that he had to accept the offer by December 1, 2015, or it would be deemed rejected. Doc. 21-1 at 55. The Trial Plan also required that a first payment of $559.05 be made by December 1, 2015, followed by two more payments of the same amount by January 1, 2016 and February 1, 2016. Doc. 21-1 at 65. Here is where the parties' stories diverge.

Defendants assert that Plaintiff did not accept the Trial Plan or make the required payment by December 1, 2015. Doc. 20 at 7; Doc. 21-1 at 4 (Syphus Decl.). Plaintiff, however, insists that he purchased a money order on November 27, 2015 for $592.00 and mailed it to SPS, and "did the same for the second and third trial modification payments." Doc. 32-1 at 2 (Young Decl.). Plaintiff submitted portions of SPS's call logs in support of his response. Doc. 32-4 at 3-4. On January 5, 2016, the call logs reveal that Plaintiff informed an SPS representative that he had mailed a money order of $592.00 on November 27, 2015 and sent in another payment of $560.00 on December 31, 2015. Doc. 32-4 at 4. Plaintiff was informed, however, that the approval of his

Trial Plan had expired on January 3, 2016 due to non-payment. Doc. 32-4 at 4. Several days later, the call logs reflect that Plaintiff's credit counselor was advised that Plaintiff's "payments" were not received until January 5, 2016. Doc. 32-4 at 3. On January 21, 2016, the credit counselor informed SPS that Plaintiff told him that he mailed $592.00 on November 27, 2015 and $560.00 on December 31. Doc. 32-4 at 3. Plaintiff's evidence includes a MoneyGram receipt for $592.00 dated November 27, 2015. Doc. 32-1 at 42. SPS's payment log reflects that it received payments from Plaintiff of $560.00 and $693.54 on January 5, 2016; there is no indication that a $592.00 money order was ever received or that Plaintiff made any payments after January. *See* Doc. 21-1 at 41.

In the meantime, on January 4, 2016, SPS sent Plaintiff letters separately informing him that his assistance request was considered to have been withdrawn due to his failure to accept the Trial Plan by the specified deadline and had expired because SPS either had not received the required payment or the signed agreement. Doc. 21-1 at 72-73, 79. On January 6, 2016, SPS sent Plaintiff a Notice of Default, informing him that his loan was in default, providing him 30 days to cure the default, and stating that failure to cure would result in acceleration of all loan payments owed. Doc. 21-1 at 87-90.

Notices were thereafter sent by SPS's foreclosure counsel to Plaintiff via certified mail. On August 29, 2016, Plaintiff was sent a Notice of Acceleration and Posting and Notice of Trustee's Sale, scheduling the October Sale for October 4, 2016. Doc. 21-2 at 10, 12. On October 4, Plaintiff was mailed a letter stating that the October Sale had been postponed and he would be notified of the date if the foreclosure sale was rescheduled. Doc. 21-2 at 15. On October 11, 2016, a new Notice of Acceleration and Posting and Notice of Trustee's Sale was

sent to Plaintiff, advising him that the November Sale would take place on November 1, 2016. Doc. 21-2 at 18, 24.

On October 14, 2016, U.S. Bank executed a Rescission of Noticed Substitute Trustee's Sale, rescinding the *October Sale* (the "Rescission Notice").  Doc. 21-3 at 2-3.  The Rescission Notice was sent to Plaintiff on October 17, 2016, and explained that, pursuant to Texas Property Code section 51.016, the *October Sale* had been rescinded.  Doc. 21-3 at 4.  The Rescission Notice further stated that "(ii) [Defendant U.S. Bank, Defendant TAS, and Plaintiff] are returned to the status quo existing immediately prior to the foreclosure proceedings on October 4, 2016; and (iii) the Note and Deed of Trust are reinstated[,] subject to the amount in arrears and total amount due, and are acknowledged as valid and enforceable in accordance with their original tenor and effect."  Doc. 32-2 at 2.  Plaintiff avers that he never received prior notice of the November Sale and first learned of it in January 2017 when he discovered an eviction suit posted on his door.  Doc. 32-1 at 3 (Plaintiff Decl.).

IV. **ANALYSIS**

Defendants make several arguments in favor of summary judgment, but a discussion of all of them is not necessary because Plaintiff's claims stem from three central allegations, each of which is refuted by the summary judgment evidence:

(1) that Plaintiff accepted the Trial Plan and timely made the three required monthly payments;

(2) that Defendants abandoned acceleration of the loan payments by virtue of the Rescission Notice; and

(3) that Plaintiff did not receive the required notices prior to the November Sale.

Doc. 20 at 10-11; Doc. 23 at 6.

Taking up the first point, the parties' most vigorous dispute is whether Plaintiff timely made the December payment under the Trial Plan, but ultimately that is not material.[1]  Even taking as true Plaintiff's statement that he did timely send the December 1, 2015 payment, he does not deny that he mailed the payment due by January 1, 2016 on December 31, 2015, and SPS did not receive it until January 5.  Doc. 21-1 at 41; Doc. 32-4 at 3-4.  So, if Plaintiff had not already violated the terms of the Trial Plan, he did so then.  Plaintiff was thus not "denied" a loan modification (or appeal), nor were U.S. Bank or SPS engaged in dual tracking the Trial Plan and foreclosure proceedings in violation of RESPA.

At the heart of Plaintiff's remaining claims — breach of contract and the TDCA,[2] wrongful foreclosure, quiet title/trespass to try title, and for a declaratory judgment — are his contentions that (1) the rescission of the October Sale "unequivocally abandoned the acceleration" of the payments due and reinstated the terms of the loan anew; and (2) as a result, he was not given the required legal notices prior to the November Sale.  Doc. 26 at 9-10, 12-13.

Regarding the first assertion, Plaintiff argues that because the October 11, 2016 Notice of the November Sale pre-dated the October 14, 2016 Rescission Notice, and the latter reinstated the loan, the November Sale plan was essentially nullified.  Doc. 26 at 15-16.  This, however, is a nonsensical reading of the Rescission Notice itself, which expressly rescinds only the October

---

[1] The Court thus need not consider U.S. Bank and SPS's argument that Plaintiff's Declaration in that respect is self-serving and fails to create a fact issue.  See Doc. 29 at 3-4.

[2] Plaintiff specifies in his summary judgment response that his TDCA claims are based on Texas Financial Code (1) sections 392.304(a)(8) and (a)(19) for U.S. Bank and SPS noticing a foreclosure sale despite Plaintiff's acceptance of the Trial Plan and payments and holding the November Sale when the Rescission Notice abandoned acceleration and reinstated the loan; (2) section 392.304(a)(2) for their failure to accept Plaintiff's Trial Plan payments, which resulted in additional fees and charges; and (3) section 392.301(a)(8) for foreclosing absent a valid contractual right.  Doc. 26 at 19-20.  Plaintiff has withdrawn his claim under section 392.304(a)(3).  See Doc. 26 at 19.

Sale and makes no mention of the October 11, 2016 Notice or the impending November Sale. *See* Doc. 32-2 at 1-2 ("U.S. Bank, N.A. . . . requests rescission of the October 4, 2016 sale"; "[Defendants and Plaintiff] are returned to the status quo existing immediately prior to the foreclosure proceedings on October 4, 2016"; "U.S. Bank . . . [does] hereby stipulate and declare all acts conducted with regard to the October 4, 2016 Foreclosure Sale of the Property are hereby rescinded."). Additionally, the Rescission Notice returned the parties "to the status quo existing immediately prior to the foreclosure proceedings on October 4, 2016." Doc. 32-2 at 2. Immediately prior to the October Sale, Plaintiff's loan was accelerated. Doc. 21-2 at 10. Plaintiff also was provided with proper legal notice of the November Sale. *See* Doc. 21-1 at 87-90 (Notice of Default); Doc. 21-2 at 18, 24 (Notice of Acceleration and Posting); Doc. 21-2 at 23-24 (Notice of Trustee's Sale).

    Finally, while Plaintiff states in his Declaration that he did not receive *any* notice of the November Sale, it was sent to him at the Property by first class, certified mail, which is deemed sufficient notice under the terms of the deed. Doc. 21-1 at 17 ("Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail" to the Property address); Doc. 21-2 at 18-19, 24.

V.  **CONCLUSION**

    For the above reasons, *Defendants' Motion for Final Summary Judgment*, Doc. 19, and *Defendant Trans Am SFE II, LLC's Motion for Summary Judgment*, Doc. 22, should be

**GRANTED** and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on August 18, 2020.

*[signature]*

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).